Good morning. May it please the court, my name is Anne Traum for Mr. Drapel. I'd like to reserve two minutes for rebuttal. I will try to keep my eye on the clock. Mr. Drapel asked this court to reverse the District Court's denial of his motion to suppress because its factual findings were clearly erroneous. The District Court erred on two critical factual points when it found that Detective Blahnik was at the storage complex and saw Mr. Drapel at around 8 p.m. on December 19th and that Mr. Drapel was arrested at 8.30. Well, counsel, let me ask you, you've got a tough burden with adverse factual findings. I understand. And it strikes me that if the detective's testimony is credited by the fact finder, then that testimony is that your client was seen coming out of the storage area shortly after 8 o'clock that evening and that's corroborated by the computer records that show he used his access code to get into his storage unit and then he's followed by other surveillance detectives from that location to the parking lot of the grocery store where he's been arrested.  I mean, I think the point here is in order to grant you relief, we have to conclude on the basis of the evidence that fits together in a plausible way that that is clearly erroneous. And maybe you can help us. I hope I can because I do think it was clearly erroneous. I want to point the Court to a couple of things. One is that when the district court adopts hook, line, and sinker detective Bolanek's theory, and nobody else can corroborate detective Bolanek's theory. So let's point, I wanted to point. But the entry records do, don't they? The storage unit, he's basing his times on the storage unit activity log. And the fact that apparently, again, the fact finder found the detectives credible, that the only person who knew the access code was your client. So we would have to assume that it was your client who entered the storage facility at about 8 o'clock that evening and went into the storage unit and actually let the detective through the gate at about 8.20. I would agree with you if detective Bolanek is telling the truth, and we don't think that he's telling the truth. I want to highlight a few things. On detective Bolanek being there at the storage unit at 8 p.m., the district court says that his testimony was credible, reliable, and uncontroverted. There was no evidence to contradict the detective's testimony. That is demonstrably false. Detective Guy puts detective Bolanek at the storage unit before 7 p.m. and testifies four times in the record he was there before 7 p.m. That is directly contradictory to what detective Bolanek said. And only when Guy is literally spoon-fed words put into his mouth by the prosecutor with leading questions on cross-examination does he then jump by an hour. This is a timeline case. Jumping by an hour is significant contradictory testimony, which the district court ignores. Also, detective Guy puts him there twice, not once. The district court didn't ignore it. What the magistrate judge said, if I understood it correctly, was that the estimates of the time by the state trial judge who issued the search warrant and detective Guy were essentially subject to the normal vagaries of witnesses who don't get everything precise. Didn't the finder of facts say that? He did dismiss. He dismissed Judge Earle, state court Judge Earle's testimony as an estimate. Well, he's not dismissing. I read it more charitably to say, you know, maybe the judge was a little off on his estimates of time. You know, he's a civil judge. He doesn't routinely sign search warrants late at night. And maybe he's not as careful as a criminal judge would have been in, you know, logging the time on the affidavit and that sort of thing. I think that's extremely charitable, more charitable than this Court actually deserves to be with respect to the testimony. Well, it's not me that's being charitable. No, I — It's the fact finder. And — I understand. But, you know, detective — I mean, Judge Earle has — he has no dog in this fight. He has no reason to lie. He's very precise and careful about his testimony about exactly what happened. And even if you say that he gave an estimate, the estimate was that Guy got to his house between 7 and 8. Even if it's at 8, that confirms Detective Guy's testimony that he had the legal description, which Bolanek got for him. In order to get there by 8, he would have needed to have that legal description by around 7 p.m. because it took him 15 minutes to find a judge. It took him 25 minutes to get to the judge's house. That confirms Detective Guy's testimony, that Bolanek was there earlier. And at a minimum, at a minimum, that means that Bolanek made two trips, not one. And we have the prosecutor with great effort here realizing that having Bolanek there twice with an unexplained second trip is a problem. And it directly contradicts Bolanek's testimony on direct that he was there one time around 8 p.m. to get the legal description. If Bolanek is lying about that, that affects whether he's telling the truth about everything else. And the time of arrest all comes from Detective Bolanek. He's the only person who estimates. His job is to keep times. He doesn't have a recollection of the time. He's working. He admits on page 180 of the record he's working off the storage unit activity log. He is tailoring his time. There was a lot going on that night. Were there not? He had three separate search warrants being executed by a number of different officers with officers running back and forth between different locations. You know, again, I mean, the magistrate judge as the fact finder said, look, I don't think that these discrepancies are as significant as you are urging. And I'm sure you made the same argument to the magistrate judge. And then we've got his fact finding as a result of. Well, we have the magistrate's fact finding is making these sweeping statements that there's nothing to contradict what Detective Bolanek says. That's simply untrue. And if you, if Detective Bolanek is wrong about the time when he was there or the time of arrest, there's nothing else. The problem is there is nothing to corroborate independently. Bolanek is not the only one who places the time of arrest at 8.30, right? No, he is. Detective Gramas, when he says it was around 8 to 8.30, he concedes on examination that he had just reviewed an arrest report, that he actually had no independent time, that he was stationed, he started surveillance sometime after 3 p.m. No independent recollection of the time. It all comes from Bolanek. Nobody checked any of the logs for the radio traffic? We have. We have. No logs. All of them say we are constantly on the phone, we are on the radio all night. These are not unknowable facts. Detective Bolanek should not be the only source for a fact like this, the time of arrest, because they say there's radio traffic. If you're having a difficult time, it's not just Detective Bolanek who picks up your client leaving the storage unit. He's followed by other detectives. But we don't know when. I understand that, but again, I'm back to the computer clock at the storage unit where the access code was used, and based on my reading of the record, that's a plausible finding that it was your client who entered those access codes at about 8 o'clock that night and therefore would have been leaving at about 8.20 when he was seen by both Detective Bolanek and the other detective who followed him to the parking lot where he was arrested. So I do want to sit down. But it's equally plausible that if you're tailing your time to the storage unit access code, you had to pick 6 o'clock or 8 o'clock, and Detective Bolanek picked 8 o'clock. Don't we have case law that says that where the facts are equally plausible one way or the other as a court of appeals, we have to defer to the factual finding and cannot declare it to be clearly erroneous? Well, they're contradicted facts, and there's no corroboration, which is a problem, I think, in this case. Thank you, Ms. Trump. We'll hear from the government. Good morning. May it please the Court. Adam Flake for the government. I agree with opposing counsel that the standard of review in this case is clear error. And as the Court just pointed out, there are numerous cases saying that when a judge chooses to credit some testimony over other testimony, there can virtually never be clear error. The government maintains that the defendant has not come anywhere near meeting his burden of showing clear error in this case. Why don't you do for us a timeline of the known and the timeline of the disputed? So the known would be the storage unit log that shows that Drapel entered at 543. I better not try and do this by memory. Let's not guess. I think it's helpful to all of us to have whatever is exact and whatever is speculation. Certainly. At 543, someone, this is just off the log, so at 543, somebody enters the code. And had the code. To enter the storage unit. At 546, somebody opens the storage unit door. 601, somebody closes the storage unit door. 603, somebody opens the outside gate to exit because, remember, they have to enter the code also to exit the storage unit area. And that was what time? 603. 603. Correct. And it's the government's position that that had to be Mr. Drapel or somebody that he'd given the code. Somebody who had the code. Yes. Okay. Then the next entry, and I'm reading from ER 271, by the way. The next entry is 810, and that's entering the code from the outside to enter the storage unit area. The next entry is 811. That's opening the door of the actual storage unit. The next entry is 817. That's closing the door of the actual storage unit. The next entry is 819. That's exiting the storage unit area from the inside. And then the next entry is opening the storage unit door without having opened the door to the area, and that's why it registers as alarm. So if you get in some other way, and in this case, if you get in because you're the police and you have a gate opener that opens the gate automatically without any code being entered, then when you open the individual door, it will register as alarm. And that time is? 1028. And that's the second-to-last entry on the activity log. All right. And am I correct that the testimony was that at 819 p.m. when the exit gate was opened, that's when the detectives followed Mr. Drapel to the grocery store parking lot? That's correct. But I also wanted to point out that Bolanek's testimony is actually that he saw Drapel on his way into the unit. Remember, Bolanek has used his thing in his car to get through without opening the gate, but he can't get back out. And so he's sitting there, and as he sits there, he sees Drapel drive in, and Drapel waves at him. And so the driving in must have been Drapel entering the code to get in, and that happened at 810. So, and then Bolanek calls everybody and has them set up surveillance so that by 819, Gramus, Detective Gramus arrives, and Gramus testifies that he arrives as Drapel is pulling out of the storage unit. Now, Gramus, I want to point out that Gramus said that he reviewed the police report, but once again, credibility determinations are for the magistrate judge to make, and the fact that he reviewed the police report does not mean that he is lying. Well, I thought what I heard Ms. Traum argue was Detective Gramus had no independent recollection of the time. He was relying completely on what the police report indicated, which I assume was written by Detective Bolanek or somebody else. That's correct, but once again, that goes to the credibility of his. He wasn't reading the arrest report. He read it, and he said this. Let's be careful here, because when a witness refreshes his recollection under the rules of evidence, if the witness is unable to testify that my recollection is now refreshed, and I recall it was at 819, that's different from a witness saying, well, I read the police report prepared by one of my fellow officers. It says that that's what the time was. I have no reason to disagree with it, but I just don't remember. So which is it? I can't recall off the top of my head, but if I could quickly. You need to refresh your recollection. Please do. What page are you on? I'm about to go to 287. It's in the third volume. Excuse me. Yeah, 287. So at 287, he says that he reviewed the reports. Maybe read the exact language there. Excuse me? Read the exact language. Okay. I set up surveillance on the Osage address. So you set up surveillance on the Osage address. Yes, ma'am. Okay. What do you mean by setting up surveillance? I sat in my vehicle and tried to get a visual on the house, and that was about 3 o'clock? Question. Answer. I believe we set up surveillance. I want to say 830. I'm not positive. Okay. Did you write any reports concerning this matter? Yes. No, ma'am. Sorry. Have you read any reports concerning this case? Yes. When was the last time you read the reports? A half an hour ago. Prior to a half an hour ago, had you read any reports? No, ma'am. But I don't see that anywhere he says that I wouldn't have remembered this if it hadn't been for the report. All right. He certainly doesn't say the report conflicts with his memory of the case. So it's ambiguous as to whether he was relying on the report or he'd read the report and it refreshed his recollection that it was sometime between 8 and 830. Yes, Your Honor. Okay. The last thing I wanted to point out is that if defendant's theory were correct and Bolanek saw Drapel at 543, enter into the storage unit at 543, that would give Detective Guy from 543 to 1030 to get the warrant. Also, if Judge Earle were correct that he left his house around 8 or 9 o'clock, which is Judge Earle's testimony, that would give him from an hour and a half to two and a half hours to make a half an hour drive from Judge Earle's house to the storage unit. He doesn't testify that he went anywhere between, that he stopped and got a pizza or anything. It would be a little hard to believe that in this fast-moving investigation he would do that. So Judge Earle, his recollection as to the sequence of events is accurate, but his testimony that he left his house about 9 o'clock, it just doesn't square with the fact that they started the search at 1030. And so not only does their theory not show clear error, it's not even internally consistent. Even if you try to adopt the version of events they give, it does not square with the documentary evidence in this case. And how much time had passed between the issuance of the warrant that evening at the home of Judge Earle and his testimony before the magistrate judge? Six months, Your Honor. Six months. And he, I assume, had no reports that he could refer to to refresh his recollection? No, Your Honor. All right. If there are no further questions, the government asks the Court to affirm. Thank you, counsel. Ms. Traum, I think you have just a little over a minute left. Sorry. I just left off with Judge Earle. I do want to point out that he did review his calendar to make sure to confirm that he got home around 6 p.m. And he asked the government on page 131 of the record, he's asked specifically on cross-examination, are these your best estimation as to when everything occurred? And he answers, I don't know that it would be an estimate, counsel. If you're talking about whether it was evening or afternoon, that's not an estimate. If you're talking about whether it's between 8 and 9 o'clock or 8 and 930, that's an estimate. So he concedes there's some give in his times, but he's actually fairly precise about that. I want to point out that when the government is asked what specific documentary or precise testimony do we have about what happened when, it's the storage unit access code. That's it. And I also want to highlight that there are other aspects of Detective Vilonik's testimony that make it seem like he is lying. He completely denies on page 195 and 196 of the record that he ever had the keys to the storage unit. Detective Gramis, very clearly on page 294 to 295 of the record, says Vilonik got the keys at the time of the arrest, and he handed them back to me later at a search of the residence and said, here are the storage unit keys. And that appears to be about 45 minutes or more after the arrest. So there is a potential for time. If we agree with the fact finder that the arrest occurred at 830 and he took the keys off of Drapel and handed them to another detective, that would still be consistent with the government's theory of the timeline, wouldn't it? If you agree that the arrest occurred at 830, yes. You have to find Detective Vilonik credible to agree with that. That's what we're questioning. We have to find something quite different. We have to find that the magistrate judge's finding that he was credible was clearly erroneous. Correct. We urge you to do that. I understand. Because Detective Vilonik is the source for all of the magistrate's findings. We understand your point. Thank you very much, Counsel. Thank you. It was very well argued, and the case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson